USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/24/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>JOHN JAIRO ESCOBAR-ALONSO. | 05 Cr. 520 (SHS)<br>07 Civ. 2975 (SHS)<br><br>MEMORANDUM & ORDER |

SIDNEY H. STEIN, U.S. District Judge.

On March 22, 2006, petitioner Juan Escobar-Alonso was sentenced principally to a term of sixty-seven months' imprisonment for illegally reentering the United States following his conviction for an aggravated felony in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Escobar-Alonso now petitions pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the grounds that: (1) in calculating the Guidelines range, the Court double-counted his criminal history by using it both as a sentencing enhancement and as part of the criminal history calculation; (2) in sentencing him, the Court failed to take into account unwarranted sentencing disparities between him and defendants convicted of the same offense who are sentenced pursuant to the "fast track" program; and (3) in calculating the Guidelines range, the Court erred in calculating his criminal history. Escobar-Alonso did not directly appeal his sentence, and he states that he did not do so because there was a "conflict of interest for [his] cooperation" and because he received ineffective assistance of counsel. (Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody dated Mar. 20, 2007 ("Pet.") at 4.)

Because Escobar-Alonso does not support those contentions in any way and because his arguments on the merits were raised at sentencing and rejected by this Court, he neither shows that he had cause for failing to file a direct appeal nor that he was prejudiced by that failure.

Escobar-Alonso is therefore procedurally barred from collaterally attacking his sentence and, even if he were not, he would not prevail on the merits. Escobar-Alonso's petition is dismissed.

## I. BACKGROUND

In May 2005, Escobar-Alonso was charged with a single count of illegally reentering the United States following his conviction for an aggravated felony. On November 30, 2006, he pled guilty to that charge. Petitioner was originally represented by Justin Levine, Esq., but at petitioner's request, Mr. Levine was relieved and Deveraux Cannick, Esq., was substituted in his place. Mr. Cannick, in turn, was, at petitioner's subsequent request, replaced by Joyce London, Esq., who represented petitioner at his plea allocution.

Prior to Escobar-Alonso's plea allocution, the Court advised him that the Pimentel letter from the government calculated his Guidelines range at 70-87 months, and noted that the Court was not bound by that letter in determining his sentence. (Tr. dated Nov. 30, 2006 at 14, Ex. B to Gov't Letter dated June 29, 2007.) Also during that proceeding, Ms. London noted that the government initially thought that the petitioner's criminal history category and sentence would be lower, but in preparing the Pimentel letter, the government determined that certain of petitioner's prior convictions were not related and were therefore to be counted separately. (Id. at 2-4.) Petitioner had previously been convicted of four felonies, which resulted in eleven criminal history points, including: (1) three criminal history points for his conviction on or about March 23, 1994, for burglary in the second degree in Nassau County Court, Hempstead, New York, for which he received a sentence of 18-54 months' imprisonment; (2) three criminal history points for his conviction on or about August 8, 1996, for criminal sale on July 19, 1995 of a controlled substance in the fifth degree in New York Supreme Court, Queens County, for which he received a sentence of 33-66 months' imprisonment; (3) three criminal history points

for his conviction on or about August 8, 1996, for criminal sale on November 13, 1995 of a controlled substance in the fifth degree in New York Supreme Court, Queens County, for which he received a sentence of 33-66 months' imprisonment; and (4) two criminal history points for his conviction on or about August 20, 1996, for criminal possession of a controlled substance in the seventh degree, for which he received a sentence of one year's imprisonment. (See Presentence Report ("PSR") at ¶¶ 24-31.) At the time of his sentencing, petitioner also had a pending burglary case in New York Supreme Court, New York County, but no criminal history points were assessed for that charge because no disposition had been reached at the time of sentencing. (Id. at ¶ 35.) Finally, two more criminal history points were added because petitioner committed the offense of illegal reentry while on parole. (Id. at ¶ 33.)

Prior to sentencing, petitioner's counsel, Ms. London, submitted a letter objecting to the criminal history calculation in the PSR on the grounds that: (i) petitioner should not have been assessed two criminal history points for commission of a crime while on parole because he was not on parole when he committed the crime of illegal reentry; (ii) petitioner should receive a non-Guidelines sentence to eliminate disparities with districts participating in the fast track program; and (iii) petitioner's criminal history had been "double-counted" to increase both his criminal history category and his offense level. (Def.'s Letter dated Mar. 9, 2006, Ex. C to Gov't Letter dated June 29, 2007.) At a March 16, 2006 proceeding, the Court found that petitioner had, in fact, admitted to illegally entering the country in 2003, while he was still on parole, and thus those two criminal history points were properly assessed. (Tr. dated Mar. 16, 2006 at 6-7, Ex. E to Gov't Letter dated June 29, 2007.) Furthermore, the Court specifically determined that the criminal history calculation was correct, that "fast track" programs did not lead to unwarranted disparities, and that there was no impermissible double-counting. (Id. at 13-14.) Nevertheless,

the Court adjourned the sentencing to March 22, 2006 in order for the parties to brief the issue of whether petitioner should receive credit for time spent in federal custody prior to the date of his sentence. (Id. at 16-17.) On March 22, after considering the parties' submissions on that issue, the Court determined the correct Guidelines range was 77-96 months, and sentenced petitioner to 67 months in light of the fact that petitioner had already spent 10 months in federal custody. (Tr. dated Mar. 22, 2006 at 7-8, 15, Ex. A to Gov't Letter dated June 29, 2007.)

Although Escobar-Alonso was advised of his right to appeal, and stated that the understood his appeal rights, (id. at 16), he did not do so. On March 23, 2007, Escobar-Alonso filed this pro se petition pursuant to 28 U.S.C. § 2255.

## II. DISCUSSION

### A. Legal Standards

Section 2255 is not intended to be a substitute for a direct appeal. United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also Fountain v. United States, 357 F.3d 250, 254 (2d Cir. 2004). In fact, "the failure to raise a claim on direct appeal is itself a default of normal appellate procedure," and can result in a procedural default. Campino v. United States, 968 F.2d 187, 190 (2d Cir. 1992). A defendant who does not file a direct appeal can only advance a new claim in a Section 2255 motion if "he can show cause for his procedural default and actual prejudice resulting from the error." Riascos-Prado v. United States, 66 F.3d 30, 34 (2d Cir. 1995); see also Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998); Campino, 968 F.2d at 190 ("[A] procedural default of even a constitutional issue will bar review under § 2255, unless the defendant can meet the 'cause and prejudice' test.").

Cause for procedural default occurs when "something external to the petitioner," which "cannot fairly be attributed to him" prevents him or his counsel from filing a direct appeal. See Coleman v. Thompson, 501 U.S. 722, 752-53, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); see, e.g., Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986) (Cause can be shown if, objectively, there was some "interference by officials" that prevented petitioner or his counsel from filing an appeal.) An ineffective assistance of counsel claim, however, need not be brought on direct appeal, as "[i]t is well settled that ineffective assistance may provide cause for a procedural default." Sirotnikov v. United States, No. 97 Civ. 3295, 1998 WL 770557, at *3 (S.D.N.Y. Nov. 2, 1998); see also Massaro v. United States, 538 U.S. 500, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003) (holding that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255").

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his attorney's representation fell below an objective standard of reasonableness, Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and (2) there is a "reasonable probability" that the outcome of the proceeding would have been different but for counsel's error. 466 U.S. at 694; see also Fountain, 357 F.3d at 254.

B. Discussion

Escobar-Alonso did not file a direct appeal, and the government argues that his Section 2255 motion is procedurally barred. Because petitioner has neither shown that there was adequate cause for his failure to file an appeal—including failing to show that he was provided with ineffective assistance of counsel—nor that he was prejudiced by the failure to file an appeal,

his petition for relief pursuant to Section 2255 is procedurally barred. It fails as well on the merits.

*1. Cause*

Petitioner offers two causes for his failure to appeal: (1) a "conflict of interest for [his] cooperation" and (2) ineffective assistance of counsel. Petitioner writes in his July 17, 2007 letter to the Court that he "was a cooperator with the government," and although he "never got into any kind of agreement with the government," his "cooperation conferences" with AUSA Monck "exposed [his] whole life, and put [his] family in risk, and brought consequences to them." (Pet.'s Letter dated July 17, 2007 at 1-2.) He writes that his first two defense attorneys, Mr. Levine and then Mr. Cannick, "wasted . . . time trying to get somebody else[] credit for my cooperation, instead of working on my case[, and] I lost the opportunity to [c]hallenge my deportation order from 1998." (Id. at 2.) Petitioner states that by the time Ms. London became his counsel, he was "already almost finish[ed] with my cooperation and [AUSA] Monck decided that it was better not to continue with the cooperation and take a plea." (Id.)

As to petitioner's first claim, there is no evidence in the record that he ever was enlisted as a cooperator with the government. In addition, after a Curcio hearing was held in regard to a potential conflict in Justin Levine's representation of petitioner, he was assigned new counsel—Deveraux Cannick—to ensure that he had conflict-free representation. Furthermore, petitioner provides no information as to why any possible but unstated conflict raised by his possible cooperation prevented him or his attorney from filing an appeal. By petitioner's own admission, the possibility of cooperating with the government was no longer available by the time he pled guilty. There is no evidence that any cooperation discussions occurred after petitioner was sentenced or that any issues with respect to cooperation remained unresolved after he was

sentenced. Neither petitioner's alleged potential cooperation nor any conflicts raised by that cooperation suffices as a cause for his failure to file a direct appeal.

As to petitioner's claim of ineffective assistance of counsel, he fails to specify how his counsel was ineffective or how that ineffectiveness caused him to fail to file a proper appeal. Escobar-Alonso references time wasted by his lawyers in attempting to get him to cooperate with the government and the fact that Mr. Cannick failed to visit Escobar-Alonso in prison. (Id.) Yet Escobar-Alonso also states that Ms. London became his lawyer before he pled guilty and that she was not ineffective. (Id.) Petitioner therefore has not supported his claim that his counsel fell below an objective standard of reasonableness. Furthermore, because petitioner pled guilty after Ms. London became his counsel, and because he admits she was not ineffective, there was no "reasonable probability" that he would have filed an appeal but for his counsel's errors. Petitioner's "conclusory assertions" are insufficient to establish that ineffective assistance of counsel was the cause of his failure to file a direct appeal. See United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987). Furthermore, as shown below, petitioner's arguments fail on the merits, and thus there was no "reasonable probability" that the outcome of the proceeding would have been different but for counsel's error. His counsel was not ineffective.

*2. Prejudice*

Even assuming that petitioner could show cause for his failure to file a direct appeal, he would also have to establish prejudice, which he cannot do. Petitioner argues that his sentence is improper because the Court failed to consider disparities with "fast track" programs, double-counted his criminal history, and calculated his criminal history incorrectly by failing to take into an account an agreement petitioner had with AUSA Monck to, apparently, count some or all of his August 1996 convictions as one conviction. (Pet. at 5.)

First, the Court specifically considered and rejected petitioner's arguments at sentencing that his sentence should be comparable to those received by defendants in districts with "fast track" programs and that his criminal history was "double counted." The U.S. Court of Appeals for the Second Circuit has held that a defendant's sentence is not rendered unreasonable due to disparities between sentences in jurisdictions with and without a "fast track" program. See United States v. Mejia, 461 F.3d 158, 163 (2d Cir. 2006) ("[A] district court's refusal to adjust a sentence to compensate for the absence of a fast-track program does not make a sentence unreasonable."); see also United States v. Liriano-Blanco, 510 F.3d 168, 171 (2d Cir. 2007). Second, prior convictions may be considered for purposes of determining both criminal history and offense level when called for by the Sentencing Guidelines. See United States v. Carrasco, 313 F.3d 750, 757 n.2 (2d Cir. 2000) ("'[T]he criminal history section is designed to punish likely recidivists more severely, while the enhancement under [the applicable Guidelines provision] is designed to deter aliens who have been convicted of a felony from re-entering the United States.'" (quoting United States v. Adeleke, 968 F.2d 1159, 1161 (11th Cir. 1992))).

As to the third argument, it is unclear on what basis petitioner contends that his criminal history category was calculated improperly. It is clear, from the transcript of the sentencing hearing however, that prior to petitioner's allocution, defense counsel stated in front of petitioner that the government's Pimentel letter contained a higher sentencing range than the government had previously discussed orally, and that even with that knowledge, petitioner pled guilty. (Tr. dated Nov. 30, 2005, Ex. B to Gov't Letter dated June 29, 2007 at 2-4, 17.) It is also clear that each of petitioner's August 1996 convictions were treated separately, and defense counsel did not object to that calculation. (PSR ¶¶ 24-35; Def.'s Letter dated Mar. 9, 2006, Ex. C to Gov't Letter dated June 29, 2007.) Petitioner provides this Court with no information as to any

agreement between himself and the government relating to the treatment of his August 1996 convictions. The criminal history points were properly assessed for petitioner's prior convictions.

Petitioner's arguments fail on the merits, and therefore he was not prejudiced in failing to file an appeal.

## III. CONCLUSION

For the reasons set forth above, the petition pursuant to 28 U.S.C. § 2255 is denied. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253 (as amended by the AEDPA); Middleton v. Attorneys Gen. of New York and Pennsylvania, 396 F.3d 207 (2d Cir. 2005) (per curiam); Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-13 (2d Cir. 2000); Soto v. United States, 185 F.3d 48, 51-53 (2d Cir. 1997); United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997). Pursuant to 28 U.S.C. § 1915(a), the Court certifies that any appeal from this Order would not be taken in good faith.

Dated: New York, New York
June 23, 2008

SO ORDERED:

Sidney H. Stein, U.S.D.J.